UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JEFFREY A. WILLY, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CASE NO. 1:18-cv-03934-RLY-DML |
| ELI LILLY AND COMPANY, | ) ) ) | |
| Defendant. | ) | |

**REPLY BRIEF IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Despite being riddled with unsupported "facts," Plaintiff Jeffrey Willy's response has revealed that he cannot substantiate the harsh claims he has made against his former employer, Eli Lilly and Company ("Lilly"). Though he paints a rather grim picture of his employment at Lilly (despite his undisputed Lilly-supported success in obtaining two graduate degrees and three promotions in just twelve years), Willy has been unable to direct the Court to evidence backing most of his allegations – and the evidence he does identify falls far short. At best, Willy has demonstrated that he had a less-than-ideal relationship with his most recent supervisor, which ultimately led him to accept a higher-paying position with a competitor. When challenged to point to evidence supporting his assertion that he could convince a jury that she – or anyone at Lilly – subjected him to sex discrimination, sexual harassment, or retaliation, Willy has shown up empty handed.

The material facts are undisputed. It is undisputed that Lilly never disciplined Willy or subjected him to any other adverse action; instead, Lilly supported Willy in obtaining two degrees and promoted him three times. It is undisputed that Lilly conducted a comprehensive

1

investigation when Willy complained about a handful of offensive incidents (some more than 10 years old) in 2018. It is undisputed that Willy voluntarily resigned from his position at Lilly in September 2018, nearly two months after accepting a position with a competitor with a higher base salary. And it is undisputed that much about which Willy complains that allegedly led to his constructive discharge happened *after* he accepted a position with a competitor. Based on these and other undisputed facts and the well-established law, the Court should grant Lilly's Motion for Summary Judgment in its entirety.

II. **ARGUMENT**

The Court should grant Lilly's Motion for Summary Judgment because Willy did not raise any disputed material facts supported by evidence, did not exhaust his administrative remedies as to his constructive discharge claim – which fails regardless – and cannot establish claims of sex discrimination, sexual harassment, or retaliation.

    A. **Willy's Response Fails To Identify Material Disputes Supported By Evidence.**

        1. **Willy Failed To Provide A Statement of Material Facts In Dispute That Identifies The Potentially Determinative Facts And Factual Disputes.**

Willy fails to satisfy S.D. Ind. L.R. 56-1(b), which required his response to "include a section labeled 'Statement of Material Facts in Dispute' that identifies the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment." Instead, Willy's "Disputed Issues of Material Fact" section hardly identifies any "facts" at all. [Filing No. 68 at 4-7.] In the entire section, Willy cites to the record only nine times – three of them to Lilly's Motion for Summary Judgment – and does not identify any material facts. [*Id.*] For instance, one of the facts for which Willy *does* provide a citation is that Willy received "more than twenty (20) inspire awards and/or spotlight points from

2

Lilly." [*Id.* at 5.] Lilly does not dispute that Willy was given "inspire awards" twenty times in his ten-year tenure at Lilly, though, and whether those recognitions "were for excellence in his performance" is not a material dispute. [*Id.*] In another example, Willy points out that Lilly claimed in its Motion for Summary Judgment "that it prohibits discrimination, harassment, and retaliation." [*Id.* at 4.] Again, this is not in dispute as Willy does not contend that Lilly does not have such a policy. [*Id.*]

Willy's failure to identify genuine disputes of material fact as required by S.D. Ind. L.R. 56-1(b) has consequences. *See* S.D. Ind. L.R. 56-1(f) (explaining that "the facts as claimed and supported by admissible evidence by the movant are admitted" unless specifically controverted by the non-movant "in that party's 'Statement of Material Facts in Dispute' with admissible evidence," among other things); 56-1(h) (explaining that "[t]he court has no duty to search or consider any part of the record not specifically cited in the manner described. . . ."). Chief among them is that, absent a genuine dispute of material fact (and there is none), this case is ripe for judgment as a matter of law.

### 2. **Willy Fails To Analyze The Elements Of His Individual Claims With Reference To The Evidence.**

Willy's response also fails to include citations to the record as required by S.D. Ind. L.R. 56-1(e). As the Seventh Circuit has noted, summary judgment is the proverbial "'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (marks and citation omitted). In his response, however, Willy seems to believe that it is only Lilly's burden to present this evidence, not his. He actually argues that "[w]hile it is true that Willy will have to provide evidence *at trial* from which a reasonable jury could conclude that he was discriminated against, harassed, and retaliated against, the [sic] Eli

3

Lilly does not meet its burden at summary judgment by presenting a bald statement on its potential liability and asking the court to believe it." [Filing No. 68 at 9 (emphasis added).] Not only did Willy get the standard wrong but he also mischaracterizes Lilly's brief. In its opening brief, Lilly supported its arguments by citing to extensive evidence and case law in satisfaction of the exhausting standard for summary judgment. However, consistent with the comment quoted above, Willy does not.

In *Packer v. Trs. of Ind. Univ. Sch. of Med.*, 800 F.3d 843 (7th Cir. 2015), the Seventh Circuit addressed this very situation. In that case, the Court noted that the plaintiff's summary judgment response "failed the court and the litigation process in multiple ways (including a factual narrative that wholly ignored the University's own statement of facts it believed to be undisputed)." *Id.* at 848. The Court also focused on the plaintiff's "failure to analyze the elements of her individual claims with reference to the evidence." *Id.* When responding to the substantive arguments raised by the defendant, the plaintiff "consistently failed to support her factual assertions with appropriate citations to the relevant portions of the record so as to demonstrate why the facts material to each of her claims were disputed. Instead, she often supplied general citations to affidavits or depositions without directing the court to any particular page or paragraph number." *Id.* Because of this, Seventh Circuit determined that the plaintiff had failed to meet her burden and only considered the evidence to which she properly cited. *Id.*; *see also, Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, No. 18-3351, --- F.3d ---, 2021 WL 613425, at *2 (7th Cir. Feb. 17, 2021) (affirming summary judgment when district court refused to consider evidence plaintiff had mischaracterized or offered only speculation).

Likewise, Willy consistently fails to support his assertions with appropriate citations to the relevant portions of the record to demonstrate why the facts material to each of his claims

4

were disputed. This leaves Lilly – and the Court – to dig through the record to determine whether supportive evidence actually exists. For instance, in his introduction, Willy makes strong allegations against Lilly, including "disparity in pay" and a "gap in lab support." [Filing No. 68 at 1.] However, Willy never again mentions any disparity in pay and provides no citation for the allegation that he was denied lab support. He also asserts that Lilly "refused to adequately and sufficiently investigate Willy's Complaint" but cites to no evidence whatsoever to support this allegation or refute the evidence Lilly cited to the contrary. [*Id.* at 9, 30, 31.] In yet another example, Willy alleges – without citing to the record – that "Stauber began reaching out to Willy's colleagues requesting negative feedback on Willy," [*Id.* at 14], when in fact, the evidence in the record states the exact *opposite*.[1] [Filing No. 67-5 at 15 (Stauber Dep. 56:17-19 ("Q: Have you ever specifically asked for negative feedback? A: No.").] As this demonstrates, Willy's assertions cannot be accepted at face value, and his failure to provide any evidence to support his claims points to one logical conclusion: there is none.

As the Seventh Circuit held in *Packer*, this Court should not allow Willy to "put up" such claims without citation that force Lilly and the Court to wade through the entire record to discover for ourselves whether Willy actually has identified disputed material facts, as he claims. Therefore, the Court should not consider the assertions Willy raises without adequate citation to the record.

  B.  **Willy's Constructive Discharge Claim Fails.**

Regardless of the evidence this Court considers, Willy's constructive discharge claim still fails. Willy did not exhaust his administrative remedies, but even if he did, his constructive discharge claim falls far short of surviving summary judgment.

---

[1] Further, this must not be a genuine issue of material fact because it did not appear in the "Disputed Issues of Material Fact" section of Willy's response, as required by S.D. Ind. L.R. 56-1(b).

### 1. **<u>Willy Did Not Exhaust His Administrative Remedies With Respect To His Constructive Discharge Claim.</u>**

Willy asserts in his response, without citing to case law or the record, that Lilly failed to "designate[] any charge with the EEOC by Willy to support its assertion that Willy failed to claim 'constructive discharge'" and that these arguments should thus be summarily dismissed. [Filing No. 68 at 11.] However, Lilly did include a copy of the EEOC Charge, submitted an affidavit to verify its authenticity, and cited to both in its opening brief. [Filing No. 59 at 10; Filing No. 58-1 at 4 (Anthony Decl. ¶ 9); *Id.* at 94-95 (Anthony Decl. Ex. F).] Lilly also extensively described Willy's failure to exhaust his administrative remedies. [Filing No. 59 at 12-13.] Because this is the only Charge at issue, Willy's assertion that he was left to "speculate as to the alleged failures of the undesignated charge" is quite puzzling. [Filing No. 68 at 11.] This Court should disregard Willy's waiver argument.

Turning to the substance, the Court should find that Willy failed to exhaust his constructive discharge claim for several reasons. As an initial matter, Willy has no excuse for failing to raise the constructive discharge claim in his EEOC Charge because it is undisputed that he filed the Charge *after* he had decided to leave Lilly. [Filing No. 58-2 at 55-56 (Willy Dep. 236:10-237:9); Filing No. 58-3 at 29 (Willy Dep. Ex. 17); Filing No. 58-1 at 4 (Anthony Decl. ¶ 9); *Id.* at 94-95 (Anthony Decl. Ex. F).] Indeed, he admittedly had accepted a job with a competitor by that point. [Filing No. 58-2 at 55-56 (Willy Dep. 236:10-237:9); Filing No. 58-3 at 29 (Willy Dep. Ex. 17).] Thus, Willy had all the information he needed to include a constructive discharge claim in his Charge.

Nor does Willy's argument that the EEOC *could* have discovered his resignation save his claim. Willy argues that "the EEOC could reasonably be expected to learn during its investigation of Willy's sexual discrimination, retaliation, and harassment charge that Willy

6

resigned on September 7, 2018 because of the same actions by Eli Lilly and could reasonably be expected to include that claim within the scope of its investigation." [Filing No. 68 at 13.] Respectfully, this makes no sense. The best way to make the EEOC aware of his claim would be to include it in the Charge. To say that he did not raise the constructive discharge claim because the EEOC could have stumbled upon it anyway turns the concept of exhaustion on its head.

As for his assertion that he did exhaust his administrative remedies as to the constructive discharge claim – despite never raising that issue before the EEOC – Willy relies upon the same EEOC Charge that he alleges is not in the record without introducing it as evidence or citing to it. [*Id.* at 11.] Pointing to the fact that a plaintiff may bring a Title VII claim that is like or reasonably related to the allegations of the charge and growing out of them, Willy relies on his harassment allegations to assert that his constructive discharge claim is encompassed in the charge. [*Id.* at 11-12.] This stretches the spirit of the rule beyond its limits – as the very case Willy cites acknowledges. [*Id.* at 12.] *See Russell v. Eli Lilly & Co.*, No. TH01-0160-C T/H, 2002 WL 31427441, at *5 (S.D. Ind. Oct. 16, 2002) (granting summary judgment on constructive discharge claims because "the charge does not allege constructive discharge" and the charge itself failed to suggest that the employee's working conditions met the standard); *See Denney v. Mosey Mfg. Co.*, No. IP 98-852-C H/G, 2000 WL 680417, at *11 (S.D. Ind. Mar. 20, 2000) (granting summary judgment on constructive discharge claim because plaintiff "never filed an EEOC charge claiming that he had been constructively discharged").[2] Indeed, if this were the rule, then any Charge alleging hostile work environment would automatically preserve a constructive discharge claim. As *Russell* demonstrates, this is not the law.

---

[2] To further support his argument that he did not need to raise his constructive discharge claim in his EEOC Charge before bringing this lawsuit, Willy points to an unpublished case from the Eastern District of Louisiana. [Filing No. 68 at 12-13.] This case lacks any precedential value and – as evidenced by the cases Lilly cites – is contrary to the rulings of this Court.

7

### 2. Willy Cannot Establish A Constructive Discharge Claim.

Willy's constructive discharge claims also fails on the merits. The Seventh Circuit has noted that "working conditions for constructive discharge must be even more egregious than the high standard for hostile work environment because in the ordinary case an employee is expected to remain employed while seeking redress." *Williams v. Waste Mgmt. of Ill.*, 361 F.3d 1021, 1034 (7th Cir. 2004) (marks and citations omitted). Examples given by the Seventh Circuit of constructive discharge include "subjecting an employee to a humiliating, degrading, unsafe, unhealthful or otherwise significantly negative workplace environment." *Id.* at 1032. Whether the working conditions were intolerable is considered from a reasonable employee standard. *Penn. State Police v. Suders*, 542 U.S. 129, 147 (2004).

The undisputed facts show that Lilly did not constructively discharge Willy, and he produces no evidence that even remotely suggests otherwise. As an initial matter, Willy wholly fails to explain why – if the situation were so unbearable as he alleges – he stayed with Lilly two months after he accepted employment with a competitor for a more lucrative salary.[3] [Filing No. 58-2 at 56-57 (Willy Dep. 237:20-238:25).] Therefore, he has waived any response. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver," and "silence leaves us to conclude" a concession.). Waiting two months to leave is hardly the action a "reasonable employee" would take if conditions at work became so intolerable he felt compelled to resign. The lack of explanation is a huge omission that undercuts Willy's entire constructive discharge claim.

---

[3] Willy attempts to downplay the fact that his pay was higher at his new position by introducing an Economic Impact Report authored by a purported expert. [Filing No. 67-6.] This report is hearsay, and the Court should not consider it when ruling on Lilly's Motion for Summary Judgment. *Igasaki*, 2021 WL 613425, at *3 (explaining that a court may not consider inadmissible hearsay on summary judgment) (citation omitted).

Turning to Willy's response, Willy relies on only a handful of events to support his constructive discharge claim: (1) a July 5, 2018 meeting with his supervisor, Anja Stauber; (2) two July 10, 2018 meetings – one with Stauber and one with her supervisor, Thomas Jones; (3) two subsequent conversations – one with Jones and one with Jones's supervisor, Carl McMillian; and (4) an alleged unspecified lack of "support" and "advocacy" from Human Resources.[4] [Filing No. 68 at 14-21.] Notably, only *one* of these events happened *before* Willy accepted a job with Lilly's competitor on July 6, 2018.[5] [Filing No. 58-2 at 55-56 (Willy Dep. 236:10-237:9).] Manifestly, events that took place *after* Willy decided to resign cannot have caused his resignation.

Regarding the July 5, 2018 meeting, the worst Willy alleges (without supporting evidence) is that Stauber "snapped" at him.[6] [Filing No. 68 at 14.] None of the comments he mentions were objectively insulting, harassing, or offensive, much less based on any legally protected status. And, even if the Court considers the events that post-date his decision to accept a job elsewhere, they provide no further support. For example, Willy dramatically (and unnecessarily) characterizes his recorded July 10, 2018 meeting with Stauber, claiming that he "begged" Stauber to give him a fair assessment and "prayed" that the narrative not just include negative comments. [*Id.* at 15.] Yet he did not – and cannot – identify anything Stauber said that suggests discriminatory working conditions or a hostile work environment. In fact, none of Stauber's statements implicate any protected status at all.

---

[4] He also claims that "Stauber began reaching out to Willy's colleagues requesting negative feedback on Willy." [Filing No. 68 at 14.] He cites no record evidence to support this claim. None exists. In fact, the evidence actually is to the contrary. When asked "[h]ave you ever specifically asked for negative feedback?" Stauber responded that she had not. [Filing No. 67-5 at 15 (Stauber Dep. 56:17-19).]

[5] Willy also recalls an email that he allegedly received from Stauber but has not produced this or cited to it in the record. [Filing No. 68 at 20.] Since he admits it allegedly took place "[l]ate in the summer of 2018" Lilly is left to assume this event also took place after he began searching for or accepted another position.

[6] The Court need not rely on Willy's characterizations of these conversations. Willy recorded them and submitted those recordings as evidence. [Filing No. 67 Exs. 1, 2, 8, 9, 11, 14.]

Likewise, nothing Jones said during the July 10, 2018 conversation, or he or McMillian said during the subsequent conversations, was objectively discriminatory or harassing, much less so severe that it would compel a reasonably employee to resign. [*Id.* at 16-19.] Indeed, Jones told Willy, "I don't think anyone wants to coach you out of the organization," and "[m]y commitment to you is to work to find that path forward . . . ." [Filing No. 68 at 17.] While Willy implies that Jones failed to report Willy's alleged "statement of potential self-harm," that implication is not supported by citation or the evidence. [*Id.* at 18.] In fact, Jones *did* report Willy's statement of potential self-harm to Human Resources the very next day. [Filing No. 58-1 at 54.] Regardless, that interaction is not one that would have compelled a reasonable person to resign. Willy also complains that, in a separate recorded conversation, when he asked Jones what he would do, Jones responded that he would leave the company. [Filing No. 68 at 2, 19, 20, 26, 33.] This conversation, however, occurred on July 24, 2018, *after* Willy had accepted a position with a competitor. [Filing No. 58-2 at 55-56 (Willy Dep. 236:10-237:9); Filing No. 58-3 at 29 (Willy Dep. Ex. 17).] Furthermore, the comment is of no moment. Jones was simply responding to Willy's statement that he, subjectively, felt that he could not continue to work for his supervisor. Jones's empathetic response does not establish that a reasonable person in Willy's situation would have felt *compelled* to resign.

As for the alleged (and unspecified) lack of HR "support" and "advocacy," that cannot sustain Willy's constructive discharge claim, either. Willy complains that Human Resources did not reply to all of his emails and was "disengaged" when attending meetings – at Willy's request – with his supervisor. [Filing No. 68 at 20.] Putting aside that this has nothing to do with

10

protected status,[7] complaints about the effectiveness of Lilly's Human Resources department do nothing to establish that Willy's workplace was intolerable. And to the extent Willy is complaining about the results of the Lilly's investigation into his reported concerns, that could not have possibly contributed to Willy's decision to leave Lilly because Lilly did not conclude its extensive investigation until *after* Willy had accepted a job somewhere else. [Filing No. 58-1 at 3 (Anthony Decl. ¶ 7); *Id.* at 62-64 (Anthony Decl. Ex. D); Filing No. 58-2 at 52-53 (Willy Dep. 189:23-190:3); Filing No. 58-3 at 26 (Willy Dep. Ex. 13).]

This is the sum total of the events that Willy claims caused him to resign. [Filing No. 69 at 13-31.] Willy describes other conduct elsewhere in his response that he claims contributed to a hostile work environment. But that conduct does not add up to an actionable harassment claim as discussed below. Further, because he does not claim that it contributed to his purported constructive discharge, the Court should not consider it for purposes of that claim.[8] Having failed to point to any conduct rising to the level of establishing a constructive discharge, Willy's constructive discharge claim fails as a matter of law.

C. **Willy's Sex Discrimination Claims Fail.**

To the extent Willy premises his disparate treatment sex discrimination claim on anything other than his alleged constructive discharge, that claim fares no better. Willy correctly recognizes that the Seventh Circuit's decision in *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016), clarified the legal standard in employment discrimination cases. But *Ortiz* did not eviscerate the legal requirement that a plaintiff point to an actionable adverse action to

---

[7] Willy presents no evidence – and there is none – that Human Resources treated him any differently than any other complaining employee by allegedly failing to reply to each email he sent and declining to attend every one-on-one with his supervisor.

[8] Willy's additional allegations could not support a constructive discharge claim anyway, because they fail to establish the lesser standard of a hostile work environment. *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010) (explaining that to prevail on a constructive discharge claim, plaintiff must show that working conditions are "even more egregious than that required for a hostile work environment claim") (citation omitted).

survive summary judgment. Indeed, the legal standard, according to *Ortiz*, is "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's . . . sex . . . caused *the discharge or other adverse employment action*." *Id.* (emphasis added). As Lilly explained in its opening brief, other than his alleged constructive discharge, Willy has not suffered any actionable adverse action. He did not identify any in his response, either. Instead, his response appears to conflate his sex discrimination claim with his sexual harassment claim, reciting the standard for determining the "objective severity of harassment" and describing an alleged "culture of sexist actions." [Filing No. 68 at 22.] His failure to identify any actionable adverse action – or address Lilly's argument that he suffered none – amounts to waiver and is fatal to his disparate treatment sex discrimination claim to the extent it is premised on anything other than his alleged constructive discharge. *Bonte*, 624 F.3d at 466. Willy's failure to identify any evidence of causation, like a similarly situated individual outside the protected class who received more favorable treatment – or rebut Lilly's evidence that there is none [Filing No. 59 at 15-19] – further dooms his claim. *Igasaki*, 2021 WL 613425, at *6 (affirming employer's motion for summary judgment on sex discrimination claim because plaintiff failed to identify any comparator); *Bonte*, 624 F.3d at 466 ("Failure to respond to an argument . . . results in waiver," and "silence leaves us to conclude" a concession.).

    D.    <u>**Willy's Sexual Harassment Claim Fails**</u>

Willy cannot survive summary judgment on his sexual harassment claim, either. As an initial matter, the entire hostile work environment section of Willy's response is supported by only one evidentiary citation: a single footnote. [Filing No. 68 at 24 n. 42.] In this single footnote, Willy cited five snippets of deposition testimony – four related to specific events addressed in Lilly's opening brief and a fifth containing Willy's conclusion that his work

12

environment was "toxic."  Just as in *Packer*, therefore, Willy has "fail[ed] to analyze the elements of [his] individual claims with reference to the evidence."  *Packer,* 800 F.3d at 848.  For this reason alone, his sexual harassment claim fails.

Willy's sexual harassment claim fails for other reasons, too, including that the conduct about which he complains fails to rise to the level of an actionable hostile work environment and because there is no basis for employer liability.

### 1. <u>Willy Has Not Established Objectively Offensive and Sufficiently Severe Or Pervasive Conduct.</u>

First, the conduct about which Willy complains was not objectively offensive or sufficiently severe or pervasive to rise to the level of an actionable hostile work environment.  As noted above, Willy supports this entire argument with a single footnote – and the snippets of testimony cited there fall far short of establishing an actionable hostile work environment claim.  But even if the Court considers argument and evidence scattered throughout other sections of Willy's response (though not in the "Disputed Issues of Material Fact" section), the evidence still falls short.  Although Willy boldly asserts that his "hostile work environment claim is not limited to six (6) comments over the course of ten (10) years," he identifies only one other incident that could possibly be construed as contributing to a hostile work environment.[9]  [Filing No. 68 at 24.]  It, however, cannot transform Willy's workplace into an actionable hostile work environment, nor has Willy offered any evidence to establish employer liability for it.

---

[9] Willy also alleges to a number of other events and comments to support his hostile work environment claim. [Filing No. 68 at 23 (complaining about being told to "role [sic] up his sleeves," allegedly receiving negative reviews, getting less lab support, etc.).]  These cannot support his sexual harassment claim, however, because Willy offers nothing to connect them to his sex, nor are they objectively offensive or sufficiently severe or pervasive to rise to a legal actionable hostile work environment.  See *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 390 (7th Cir. 2010).

13

US.131647615.09

In his response, Willy alleges – without any record citation or further elaboration – that he experienced a "physical assault at a work event." [*Id.* at 26.] Presumably this refers to an incident that Willy describes earlier in his response: "At a conference Willy attended on behalf of Lilly, a male supervisor grabbed Willy's buttocks." [*Id.* at 23.] Even assuming this incident occurred for the purposes of summary judgment, it is insufficient to transform Willy's workplace into an actionable hostile work environment. First, Willy's reference to "work event" obscures the fact that this was an outside conference – not sponsored by Lilly – which both employees just happened to attend. [Filing No. 67-3 at 32 (Willy Dep. 120:14-19).] Without more, Willy has cannot establish that this was part of Willy's "workplace." Second, the unnamed "male supervisor," while employed in *a* supervisory position, was not Willy's supervisor. [Filing No. 67-3 at 32 (Willy Dep. 121:21-25).] Finally, at no point – during his deposition or in his response – did Willy describe being offended by this alleged incident. Instead, he expressed being "confus[ed]" by it and feeling "bad for" the person who touched him because "it's very hard to be in the closet, and in order to accept yourself to come out, it's very challenging." [Filing No. 67-3 at 33-34 (Willy Dep. 125: 23-126:3).] Willy did not reference the incident in the pages-long chronology he submitted to Human Resources, did not describe it in his EEOC Charge, and did not include it in his Complaint.

Furthermore, even when coupled with the six comments he allegedly heard over the course of ten years (most of which were not directed at him), the alleged incident does not revive Willy's failed hostile work environment claim. Willy likens the conduct he allegedly experienced to the conduct described in only one other unpublished district court case, *Covington v. Johnson*, No. 18-cv-1076-JPG-GCS, 2019 WL 4827228, (S.D. Ill. Oct. 1, 2019), but an examination of the facts of that case establish that Willy's alleged experienced paled in

14

comparison. The plaintiff in *Covington*, whose sexual harassment claim survived summary judgment, was "peppered . . . with offensive sexual comments" "[f]rom the moment" her employment began. *Id.* at *8. She – along with another female coworker – was "berated" "on numerous occasions" "to the point of tears" and called "idiot," "retarded," and "stupid," while her male coworkers were not. *Id.* Her picture was posted as the "cute new dispatcher," and she was subjected to "frequent underwear talk, comments about [her trainer's] sex with his wife, questions about [her] sex life, and [her trainer's] display of his nipple piercings." *Id.* Notably, the court did not find that *any* of this conduct was severe. *Id.* Rather, it held that that the conduct was "pervasive enough for a reasonable jury to find . . . an objectively hostile work environment." *Id.* It occurred in a matter of months, less than a year. *Id.* at *2-4. The conduct Willy experienced admittedly was not pervasive; the six – maybe seven – alleged incidents spanned a decade.

To be sure, the Seventh Circuit and its federal district courts have considered conduct comparable to that which Willy describes. And they granted summary judgment. *See Mercer v. Cook Cty., Ill.*, 527 F. App'x 515, 521 (7th Cir. 2013) (affirming summary judgment against plaintiff who alleged a coworker intentionally bumped into her backside because, even if intentional, one isolated incident did not create a hostile work environment); *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 463-64 (7th Cir. 2002) (holding that the plaintiff's allegations that her supervisor twice rubbed her back and stared at her chest during a uniform inspection while telling her to raise her arms and open her blazer were isolated incidents that, even when taken together, did not create a sufficient inference of a hostile work environment); *Adusumilli v. City of Chicago*, 164 F.3d 353, 361-62 (7th Cir.1998) (holding that the plaintiff's complaints of teasing with sexual undertones and four isolated incidents where a co-worker briefly touched her

arm, fingers, or buttocks did not constitute sexual harassment); *Davis v. Tri Mfg., Inc.*, No. TH99-0142-C-M/H, 2000 WL 33281133, at *11 (S.D. Ind. Dec. 18, 2000) (granting summary judgment when plaintiff alleged coworker grabbed her buttocks multiple times because such isolated incidents do not constitute a hostile work environment).

### 2. Willy Has Not Established A Basis For Employer Liability.

Willy's harassment claim also fails because Willy cannot establish employer liability. Willy devotes a single paragraph in his response to the issue of employer liability – again without evidentiary citations. [Filing No. 68 at 27.] Once more, his argument falls short.

First, Willy wholly fails to distinguish the standards for employer liability based on the identity of the alleged harasser. When the alleged harasser is a coworker, "the employer is liable only if it was negligent in controlling working conditions." *Vance v. Ball State Univ.*, 570 U.S. at 424 (2013). So, Lilly cannot be liable for a male coworker's allegedly grabbing Willy's buttocks once during a non-Lilly-sponsored conference because Willy has offered no evidence that Lilly was negligent in discovering or remedying that coworker's conduct. Indeed, according to Willy, it happened only once. Lilly cannot be held liable for coworker harassment that it had no way of foreseeing. *See Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013) (when the alleged harasser is a coworker, "the employer is liable only if it was negligent in controlling working conditions").

Even if the coworker was Willy's supervisor (and he was not), Lilly still would not be liable for his conduct. When a supervisor's alleged harassment does not give rise to a tangible employment action (and there was none here), an employer can assert an affirmative defense to avoid liability by establishing that it exercised reasonable care to prevent and correct any harassing behavior and that the employee unreasonably failed to take advantage of the

16

preventative or corrective opportunities it offered. *Roby v. CWI, Inc.*, 579 F.3d 779, 786 (7th Cir. 2009). Lilly had an anti-harassment policy on which it trained employees annually; Willy does not dispute that. Yet he admittedly failed to report the male coworker's alleged inappropriate behavior as outlined in that policy to Human Resources or through other available channels. In fact, in his deposition, Willy testified that the only person in his chain of command to whom he reported the incident was Stauber. He "think[s] [he] kept it fairly simple with her and just told her about the incident at the conference" but "do[es]n't think [he] told" her who it was because the individual reported to her. [Filing No. 67-3 at 35 (Willy Dep. 130:5-13).] This is consistent with Willy's testimony that his "intent was not to go tell on – go to HR or anything" about the incident. [*Id.* at 34 (Willy Dep. 127:2-9).]

Second, Willy still has not established a basis for employer liability for any of the other alleged incidents, either. Willy's response fails to cite to any record evidence to hold Lilly liable for Stutz's, Atlas's, or Baker's alleged comments, much less apply that evidence to the well-established law. His single paragraph on employer liability does not meaningfully respond to any of Lilly's arguments about its liability (or, really, lack thereof) for any individual's alleged conduct. Instead, it baldly – and wrongly – asserts that Lilly must be liable because Willy "offered evidence of harassment from supervisors" and evidence that Lilly "was negligent in discovering remedying [sic] harassment by his coworkers." [Filing No. 68 at 27.] This is not the legal standard for employer liability for sexual harassment, *see supra* at pp. 16-17, and this skeletal argument amounts to waiver anyway. *See Bonte*, 624 F.3d at 466; *see also Echo, Inc. v. Timberland Mach. & Irrigation, Inc.*, 661 F.3d 959, 967 (7th Cir. 2011) (finding three sentence argument that failed to explain how contract was breached to be "too skeletal, and amounted to

17

waiver"). Unable to establish employer liability, Willy's sexual harassment claim fails for yet another reason.

### E. **Willy's Retaliation Claim Fails.**

Finally, for many of the same reasons already discussed, Willy's retaliation claim – to the extent it is premised on anything other than his ill-fated alleged constructive discharge – also fails.

Willy has offered no evidence of legally actionable retaliatory harassment, for example. A retaliatory harassment claim is actionable "only if there is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with different responsibilities, or a decision causing a significant change in benefits." *Slentz v. Emmis Operating Co.*, No. 1:16-cv-02568-JMS-MJD, 2018 WL 705654, at *9 (S.D. Ind. Feb. 5, 2018) (marks and citations omitted,). Willy's retaliatory harassment claim immediately fails because there was no adverse employment action. Willy was never disciplined, and he voluntarily resigned after taking a more lucrative position with a competitor. [Filing No. 67-3 at 48 (Willy Dep. 183:18-23); *Id.* at 55 (Willy Dep. 211:18-24).] The only retaliatory conduct that Willy cites is (1) Stauber's and Baker's allegedly excluding him from meetings – and emails about those meetings and (2) Stauber's informal feedback to Willy that he was not performing to her expectations. [Filing No. 69 at 30.] As an initial matter, Willy does not allege – much less cite evidence to establish – any adverse consequence to him from missing an unspecified number of meetings and emails and from being told that his performance had slipped. So his alleged exclusion from those meetings and emails and the informal performance feedback he received fall short of establishing the "significant change in employment status" required of a viable retaliatory harassment claim. *Slentz*, 2018 WL 705654, at *9 (marks and citations omitted). Moreover, Willy has not

explained how these actions are tied to his Human Resources complaint, and "suspicious timing, standing alone" does not establish a causal connection." *Argyropoulos v. City of Alton,* 539 F.3d 724, 734 (7th Cir. 2008) (citations omitted).

Likewise, his failure to investigate claim falls short, not only is it not based in fact, but also because it is – as a matter of law – not actionable. *See Clemmer v. Ofc. of Chief Judge of Cir. Ct. of Cook Cnty. and State of Ill.*, No. 06 C 3361, 2008 WL 5100859, at *15 (N.D. Ill. Dec. 2, 2008) (holding that an allegedly insufficient investigation of an employee's complaint does not rise to the level of a materially adverse action because she was not "denied any investigation whatsoever." "Clemmer may have preferred her employer to do more in in its investigation, but its failure to conduct an inquiry into her satisfaction does not constitute an adverse action."). Notably, Willy's response appears not to respond to, much less contest this, resulting in waiver. *Bonte*, 624 F.3d at 466.

In short, absent any viable adverse action on which to pin his retaliation claim – and lacking any evidence of causation – Lilly is entitled to summary judgment on Willy's retaliation claim, too.

### III. CONCLUSION

In his response, Willy fails to raise evidence of any genuine issues of material fact. Therefore, for the foregoing reasons, Lilly respectfully requests that the Court grant its Motion for Summary Judgment in its entirety.

Respectfully submitted,

FAEGRE DRINKER BIDDLE & REATH LLP

/s/ Amanda L. Shelby
Ellen E. Boshkoff (#16365-49)
Amanda L. Shelby (#27726-49)
300 North Meridian Street, Suite 2500
Indianapolis, IN  46204
Telephone: (317) 237-0300
Facsimile:  (317) 237-1000
ellen.boshkoff@faegredrinker.com
amanda.shelby@fegredrinker.com

Attorneys for Defendant

### CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2021, the foregoing was filed electronically.  Parties may access this filing through the Court's system.  Notice of this filing will be sent to the following by operation of the Court's electronic filing system:

> Brandon E. Tate
> TATE BOWEN DAUGHERTY FUNK SPANDAU LLP
> 156 East Market Street, Suite 300
> Indianapolis, IN 46204
> brandon.tate@tatebowen.com
>
> Tarah M. Baldwin
> BALDWIN LEGAL GROUP, LLC
> 8500 Keystone Crossing, Suite 470
> Indianapolis, IN 46240
> tarah@baldwinlegal.llc

/s/ Amanda L. Shelby